IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHARON A. FINIZIE          :      CIVIL ACTION
                           :
        v.                 :
                           :
JAMES B. PEAKE             :      NO. 03-4437


MEMORANDUM

Dalzell, J.                                  April 16, 2008

        Plaintiff Sharon Finizie, who herself refers to the

history of her protracted litigation as "legendary," "tenacious,"

and "unrelenting," Pl. Ex. 1, ¶ 11, has filed at least nine

lawsuits over the last ten years[1] against her employer, the

United States Department of Veterans Affairs.[2]  Of these, but two

remain.  With this Memorandum and Order, we grant summary

judgment to the VA on those two remaining claims and thereby, we

hope, bring this saga to a close.

_____

        [1] We refer to the civil actions numbered 98-3326, 99-
6426, 00-3268, 01-2008, 03-3347, 04-2805, 04-4530, 06-2135, and
06-4569.

        [2] In keeping with the requirements of Ex parte Young,
209 U.S. 123 (1908), Finizie's suits have each been filed against
the then-sitting Secretary of the Department.  By action of Fed.
R. Civ. P. 25(d), each successive Secretary or Acting Secretary
has been automatically substituted for his predecessor.  These
suits have, therefore, been litigated in turn against Togo D.
West, Jr., Hershel W. Gober, Anthony J. Principi, R. James
Nicholson, and the current Secretary, James B. Peake.  For
convenience, we will refer to the then-current defendant in each
of the suits as the "VA."

## I.   Procedural History

On April 3, 2002, after a three-day bench trial, we entered judgment in favor of the VA on Finizie's first four complaints, which we had previously consolidated.  Thereafter, Finizie filed five additional claims which we consolidated under the current civil action on July 19, 2007.  On February 4, 2008, we granted the VA's motion for summary judgment as to three of the claims, but granted Finizie's motion for additional discovery as to the two remaining claims, originally asserted in civil action nos. 03-4437 and 06-4569.  Finizie having completed that additional discovery[3], and the VA having renewed its motion for summary judgment on the remaining claims, the motion is now ripe for decision.

## II.   Facts[4]

---

[3] Although Finizie's motion for additional discovery (docket entry # 23) identified seven individuals she sought to depose during that period, it does not appear that she ever took any of those depositions.  As no transcripts of them are included in the record before us today, we must assume either that they never took place or that they were not helpful to Finizie's case.

[4] Because we rule on the VA's motion for summary judgment, we must draw all reasonable inferences in Finizie's favor, Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir. 1999), and determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Where, as here, the nonmoving party bears the burden of proof at trial, the VA may meet its burden by showing that the evidentiary materials of

(continued...)

From 1997 to 1999, Finizie, who is a Registered Nurse, was the Performance Improvement Coordinator for Patient Care Services at the Philadelphia VA Medical Center (the "VAMC"). During 1999, the VAMC began reorganizing its Quality Management functions, moving the individuals responsible for Quality Management from their individual service lines to a centralized Quality Management group.[5]  The completion of this reorganization was delayed by the lack of a director of Quality Management from some time in late 1999 until July of 2000.

On February 7, 2000, Barbara Savoca left her position as a Quality Management Specialist.  On February 25, 2000, in accordance with VAMC policy, Linda Aumiller, acting head of the QM group, sought permission to fill Savoca's position.  Because of the lack of a director and the ongoing reorganization,[6]

---

[4](...continued)
record, if admissible, would be insufficient to carry Finizie's burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[5] A previous reorganization in 1996 and 1997 had taken precisely the opposite approach and decentralized the QM group, dispersing most of its staff among the individual groups they assisted.

[6] Finizie makes some claims in her affidavit that this reorganization was complete.  See Finizie Aff. ¶¶ 31-33.  As support for this contention, Finizie references two exhibits, P-10 and P-11, totaling some twenty-five pages of text.  First, we note that it is incumbent on Finizie to direct us to those parts
(continued...)

permission to fill that vacant position was not granted until

February 6, 2001.  Finizie was offered that position and accepted

it on February 12, 2001.

From March of 2000 until she accepted Savoca's former

position, Finizie was detailed to Quality Management but remained

in a position that was technically part of Patient Care

Services.[7]  During this period, an "official assignment of

duties" document lists Finizie as a QM Specialist who reports to

the QM Director.  Finizie Aff. ¶ 26; Pl. Ex. 6.  Finizie's salary

---

[6](...continued)
of the record that support her argument, not simply to provide
the Court with an extensive record and expect us to construct an
argument on her behalf.  See Downey v. Rose, 1997 WL 411203 (July
22, 1997) at *5 ("Downey appears to operate under the
misapprehension that, in response to a motion for summary
judgment, he need only provide the Court with the record, assert
that there is evidence somewhere therein to support his claims,
and, in essence, challenge the Court to prove him wrong.")
(citing United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.
1991) ("Judges are not like pigs, hunting for truffles buried in
briefs.") (per curiam)).  Second, the very document that Finizie
identifies as supporting her claim that "the reorganization of
the Philadelphia VA Medical Center had concluded before I was
detailed into Quality Management," Finizie Aff. ¶ 32, explicitly
states that the QM reorganization ran from "1999 through January
2001."  Pl. Ex. 11, at 5.  It was, therefore, not concluded in
March of 2000 when Finizie was detailed to QM.

[7] Although Finizie's affidavit states that the Patient
Care Services product line had been abolished, the Request for
Personnel Action transferring Finizie into the QM position Savoca
had formerly held lists her prior organization as PCS.  See Def.
Mot. ex. 5.  In any event, the precise organizational
classification of her position is not a material issue of fact in
this case.

classification and other terms of employment were identical before and after her transfer to Savoca's position.  Def. Ex. 5. Although she was detailed to QM, the VAMC phone list continued to list her as working in PCS and she was not listed on the QM staff list at the secretary's desk.  Pl. Exs. 7 & 8.  Finizie had a mail folder in the QM work area, but her folder was not in its alphabetical location among the others.  Pl. Ex. 9.

In the Fall of 1999, the VAMC hired Andrea Millman as a part-time,[8] temporary Quality Management Specialist to help prepare for an audit by the Joint Commission.  Millman's position was extended on three separate occasions and eventually ended in May of 2000.

In May, 2002, the VAMC announced a vacancy for an Infectious Disease RN.  On May 28, 2002, Finizie applied for the position.  On August 12, 2002, she interviewed for the job.  Of the six candidates for the position, the reviewing panel rated Finizie fourth.  The position was offered to the top three candidates in succession, but each of them declined.  Rather than offering the job to Finizie, who was next on the list and met the minimum qualifications for the position, the VAMC elected to re-post the position.  Because there was an immediate need, the VAMC

---

[8] Millman worked twenty-four hours a week.

hired its first-choice applicant, Mary Fournek, on an interim, contract-fee basis.

In January of 2003, the VAMC re-posted the position. In the Spring of 2003, the VAMC hired Clarence Lyons, who is male, to fill the position.

## III.  Analysis

Finizie alleges both retaliation and gender discrimination claims.  Each is governed by the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Thus, Finizie bears the initial burden to establish a <u>prima facie</u> case of discrimination.  If she is successful, the VA may then articulate a legitimate, non-discriminatory reason for the adverse employment action.  If it does so, Finizie has the burden to establish that the proffered reason is pretext for discrimination.  Because this comes to us on a motion for summary judgment, the VA must establish that the record evidence, even if construed in the light most favorable to Finizie, would not allow a reasonable finder of fact to determine that Finizie had carried her burden either as to the establishment of a <u>prima facie</u> case or as to pretext.

### A.   Claims from 2000 and 2001[9]

Finizie's claims related to her job status in 2000 and 2001 are based on an allegation of retaliation only.  In order to establish a prima facie case of retaliation, Finizie must show: "1) that she engaged in protected activity, 2) that the employer took adverse action against her, and 3) that a causal link exists between the protected activity and the employer's adverse action."  Kachmar v. SunGard Data Sys., Inc, 109 F.3d 173, 177 (3d Cir. 1997).  There is, of course, no doubt that Finizie engaged in a protected activity, so we need not examine that element further.  The other two, however, require some scrutiny in this context.

The Supreme Court has recently clarified what constitutes an "adverse employment action" in the context of a retaliation claim.  In order to show an adverse employment action, Finizie must show that "a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006) (quoting Burlington Northern & Santa Fe Rwy. Co. v. White, 126 S. Ct.

---

[9] These are the claims that were originally made in Civil Action No. 03-4437.

2406, 2415 (2006)).  Finizie's most significant allegations from this standpoint are that she was underused and that the VA failed to transfer her to a QM position from her PCS position.[10]

Finizie's underuse claim is, in essence, that in retaliation for her prior EEO filings the VA gave her less work than her peers.  She alleges further that this situation was exacerbated by the decision to hire Andrea Millman to a temporary position where she did work that Finizie was qualified to do.  There is no allegation that Finizie's compensation was affected.[11]

It is significant here that Finizie's complaint focuses on the quantity -- not the quality -- of the work she was assigned.[12]  We are aware of no case (and plaintiff, whose legal

---

[10] Finizie's additional allegations that she was left off of the department phone list and that her mail folder was improperly alphabetized are so minor that they cannot possibly meet Burlington Northern's objective standard for an adverse employment action no matter how deeply they offended Finizie herself.

[11] Compensation is determined based on education and experience, not job duties.  See Aumiller Dep. at 26:12-15.

[12] In addition to consistently using the words "underutilized" and "underutilization" to describe her job situation, several comments in Finizie's affidavit refer directly to the quantity of her assigned work.  Finizie Aff. ¶ 12 ("I was not fully occupied in work activities."); ¶ 13 ("Both job functions had been performed by Ms. Kline without any difficulty and without the need of assistance by anyone, including me,
(continued...)

argument is so limited as to be almost non-existent, points to
none) that has granted relief for retaliatory "underutilization"
of a particular employee.[13]  It might be a different matter if
Finizie had alleged that she was assigned "scut work" rather than
the job she was qualified to do.  But it is difficult to imagine
that the "threat" of <u>less</u> of the same kind of work for the same
money would deter a reasonable worker from filing an EEOC
claim.[14]

Of somewhat more consequence, but still clearly
inadequate, is Finizie's claim that she was "temporarily and
indefinitely detailed to quality management with no position
title and no specific work assignment."  Finizie Aff. ¶ 9.
Finizie's claim is belied by documentary evidence that she
herself introduced into the record.  A document that Finizie

---

[12](...continued)
before I had arrived in the Quality Management Section."); ¶ 19
("I truly felt that the taxpayers were being cheated because I
was drawing a full salary.").

[13] Although there are a number of cases dealing with
the concept of "underutilization" in the employment
discrimination context, they invariably use the term to refer to
the underrepresentation of a protected class in a particular
group of employees.

[14] If one imagines one's boss saying, "If you file that
claim, I'll pay you your full salary but give you less work" most
people, and most reasonable workers, would not even regard that
as a threat, much less as an act that would deter filing

identifies as "the agency's official assignment of duties document," id. ¶ 26, lists her position[15] title as "QM Specialist of Neurology, Audiology, Dental" and lists significant job duties, similar to those of her peers in Quality Management.  Pl. Ex. 6.  Finizie cannot create a material issue of fact simply by broadly alleging facts in an affidavit that contradict her own supporting evidence.  See Maldonado v. Ramirez, 757 F.2d 48, 51 (3d Cir. 1985) ("An affidavit that is 'essentially conclusory and lacking in specific facts' is inadequate to satisfy the movant's burden.") (quoting Drexel v. Union Prescription Ctrs., Inc., 582 F.2d 781, 789-90 (3d Cir. 1978)).

Finizie also alleges that the delay in hiring her into Savoca's position was discriminatory.  There was no salary distinction between the two jobs.  Nevertheless, because Savoca's job had at least somewhat different duties from those she had been assigned, we find it at least plausible that a reasonable employee could be deterred from filing a discrimination claim by the prospect of being denied Savoca's job for a significant period of time.

We must also examine the question of whether Finizie has established a causal link between her protected activity and

---

[15] Actually, the document refers to "Positon," but we assume that is simply a typographical error.

the allegedly adverse employment action.  The most common way to
establish a causal connection is to use the temporal proximity
between the protected activity and the adverse action.  Here,
Finizie had an ongoing action pending in federal court during
2000 and 2001.[16]  Because Finizie has had at least one
discrimination complaint pending against the VA constantly for
more than nine years, the timing of the VA's action is not
particularly suggestive.  Nevertheless, by crediting Finizie's
statements, a reasonable jury could determine based only on the
existence of her pending lawsuit that there was a causal link
between Finizie's suit and the VA's action.  Therefore, Finizie
meets her burden as to that element of the relevant test.

        Although it is a close case, therefore, we find that
Finizie has made out a prima facie case of retaliation with
regard to her position in 1999 and 2000.  Because, however, we
also find that Finizie has failed to show that the VA's proffered
legitimate reasons for termination are pretextual, we will still
grant the VA's motion for summary judgment.

        The VA alleges that Andrea Millman was hired on a part-
time, temporary basis to help prepare for the Joint Commission

---

        [16] Finizie filed her first federal lawsuit against the
VA in 1998.  We entered the verdict in the VA's favor on April 3,
2002.

review.  Aumiller Dep. at 28:14-19.  Millman had specific

experience related to preparing for such a review.  Id. at 28:8-

11.  Once the Joint Commission review was completed, Millman's

tenure was extended to help fill the gap created by Ms. Savoca's

resignation.[17]

It cannot be the case that the VA discriminated against

Finizie by hiring Millman into a part-time, temporary position

while Finizie maintained her permanent, full-time position.

First, Millman was hired before Finizie's reassignment based on

specific experience -- namely, preparing for Joint Commission

review -- that Finizie does not allege she had.  Second, it is a

reality of most bureaucratic environments that departmental

managers will seek to get any additional staffing they can and

maintain it as long as possible because it is often difficult to

---

[17] Plaintiff's allegations with regard to the
allocation of work are hard to decipher.  In particular, it is
unclear how to reconcile her allegation that there was not enough
work for her to do with the undisputed fact that there was an
open position in the department that plaintiff believes she was
entitled to (and into which she was eventually hired).  We are
not at all clear how Finizie's reassignment into Savoca's
position fundamentally altered the total amount of work the QM
department had to do.  As best we can make out, it appears that
Finizie's claim is that her "underutilization" was caused by the
continued existence of Millman's part-time position.  We address
her claims accordingly.

obtain staffing quickly when needs change.[18]  QM management's
decision to keep Millman's position for as long as possible is
not an act of discrimination against Finizie, but rather a
manager's attempt to navigate the sometimes treacherous waters of
bureaucratic staffing.[19]

        Because Millman was already working in QM when Finizie
was detailed there in 1999, Finizie Aff. ¶ 11, there is no claim
that Millman's hiring caused Finizie's "underutilization".
Rather, Finizie's claim appears to be that, once she was detailed
to QM, Millman's position should immediately have been
terminated.  While at this procedural posture we must credit
Finizie's claim that she was underused, we cannot find that
Aumiller's failure to prematurely terminate Millman was a
discriminatory act.  Finizie has failed to demonstrate that the
VAMC's proffered reason for Millman's position -- that she was
needed to prepare for the Joint Commission review and that,

_____

        [18] Finizie's own position is a perfect example of this.
It took QM management nearly a year to get approval to refill an
existing, permanent position with an existing, permanent
employee.

        [19] Finizie was, of course, unsuited to fill Millman's
position herself because it was part-time and temporary.  Finizie
has not testified -- nor could she credibly have done so -- that
she would have taken Millman's position had it been offered to
her.

13

thereafter, there was a gap caused by Savoca's departure -- is pretextual.

With regard to its failure to hire Finizie into a permanent QM position immediately, the VAMC claims that it lacked approval to hire anyone into Savoca's job until February of 2001. Finizie has produced no evidence tending to show that this explanation is pretextual.

Because a finding of pretext will usually involve questions of a manager's intent, see Stewart v. Rutgers, The State Univ., 120 F.3d 426, 431 (3d Cir. 1997), it is the rare employment case in which a plaintiff can demonstrate pretext solely on the basis of her own affidavit.  Most often, a showing of pretext will require the production of documents or deposition testimony at odds with a defendant's proffered explanation. Finizie produces only one such piece of evidence: Michael Sullivan's statement regarding the ongoing reorganization to the EEO examiner, Pl. Ex. 10, at 9:2-10:7, which she claims is contrary to the VA's assertion that the reorganization was complete, Pl. Ex. 11, at 2.  Finizie's claim, however, is based on a misreading of which of the two reorganizations is being discussed in each document.  Sullivan's statement is clearly discussing the reorganization that took place between 1999 and January, 2001, a process that was ongoing during the period of

14

the alleged discrimination.  Both parties agree that the earlier
reorganization, which had concluded before Finizie was detailed
to QM, is of no relevance to Finizie's claims in this suit.  Both
parties also agree that, prior to February, 2001, Finizie was not
a permanent member of the QM staff.  Thus, Sullivan's statement
creates no inference of pretext.  Rather, it is entirely
consistent with the VA's position that Finizie could not be hired
into Savoca's position because QM lacked authority to fill the
position.[20]

Finizie produces no evidence that supports her claim
that the VA's proffered reason for the timing of her hiring is
pretextual.  Instead, she complains "[t]he fact that management
can say anything as an excuse and not present any documentation
to support that excuse, does not make the excuse true."  Finizie
Aff. ¶ 36.  While Finizie is correct that the mere proffering of
a reason[21] does not make it true, such a proffer is the only
burden that McDonnell Douglas places on the VA.  As plaintiff,
Finizie bears the overall burden of proof in this case.  While
McDonnell Douglas seeks to address the evidentiary difficulties
that are often present in cases dealing with intent, it does not

---

[20] It is undisputed that the position remained empty
from Savoca's departure until Finizie was hired to fill it.

[21] We will refrain from calling it an "excuse."

shift the overall burden of proof in employment discrimination cases from plaintiff to defendant.

Finizie goes on to complain that the VA failed to produce documents related to her claim.  Id.  Even if that is true, such an issue is properly raised in the context of a motion to compel, not as a defense to summary judgment.  If there were additional documents Finizie sought access to, she needed to address that issue during the discovery period.  Rule 56 does not allow a non-moving party to avoid summary judgment by positing the existence of documents it does not have, but instead requires the party opposing summary judgment to actually produce them.  Finizie has failed to do so and so her unsupported claims that additional documents exist are irrelevant.

Because Finizie has failed to demonstrate pretext with regard to her job status in 2000 and 2001, we must grant the VA's motion for summary judgment as to those claims.

### B.   Claims from 2002[22]

With regard to the job posting in 2002, Finizie claims both retaliation and gender discrimination.  The relevant prima facie standard for retaliation is again Kachmar as limited by

---

[22] These are the claims that were originally made in Civil Action No. 06-4569.

16

Burlington Northern.  For Finizie's gender discrimination claim,
she must show that: "(a) she was a member of a protected class,
(b) she was qualified for the . . . job to which she applied, and
(c) another, not in the protected class, was treated more
favorably."  Scheidemantle v. Slippery Rock Univ., 470 F.3d 535,
539 (3d Cir. 2006).

It is clear that Finizie can make out a prima facie
case of both retaliation and gender discrimination.  With regard
to retaliation, there is no question that not getting a position
she desired and for which she had applied -- even if it comes
with no concomitant increase in salary or benefits -- is a
sufficiently adverse action to deter a reasonable person from
raising a claim of discrimination.  Further, as we found above,
the fact that Finizie had active, pending claims during this
period is sufficient to carry her burden of showing a causal link
at this stage.  Likewise, the fact that she was not given the job
and a man was eventually hired is sufficient to make out a prima
facie case of gender discrimination.[23]

_____

[23] In her affidavit, Finizie appears to allege two
separate acts of discrimination: re-posting the position and
hiring Lyons.  Had the VA re-opened the position but then hired
Finizie anyway, it does not appear that she would have a claim
since there would be no adverse employment action.  See 42 U.S.C.
§ 2000e-2(a)(1) (making it an unlawful employment practice "to
fail or refuse to hire or to discharge any individual, or
                                                 (continued...)

17

To meet its portion of the <u>McDonnell Douglas</u> burden, the VA has put forward a legitimate, non-discriminatory reason for its decision not to hire Finizie, namely that Lyons was more qualified, most importantly (but not solely)[24] because he had recent infection control experience.

Once the VA puts forward its legitimate reason for hiring Lyons, the burden shifts back to Finizie to demonstrate that the proffered reason is pretextual.  Because this burden is the same for both Finizie's retaliation and gender discrimination claims, we treat them together.  We are faced with a motion for summary judgment, so the question before us is whether, based only on the evidence in the record and making every reasonable inference in Finizie's favor, a reasonable finder of fact could determine that Finizie had carried her burden to show pretext.

Contrary to the tone of Finizie's argument, there is no burden on the VA to prove the truth of its proffered reason.

---

[23](...continued)
otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of sex).  The alleged discrimination was not complete until Lyons was hired.  Thus, these two claims merge into a single claim for discriminatory failure to hire.

[24] Dr. Maslow, for example, also testified at some length about Lyon's ability to multi-task as demonstrated by his concurrent positions at two different hospitals, <u>see</u> Pl. Ex. 16 at 323-25, and his perception that Lyons would be more adept at interacting with other staff, <u>id.</u> at 334-35.

Rather, Finizie, as the plaintiff, bears the burden of demonstrating that it is pretextual.  Thus, for example, Finizie's allegation that "there were no defined criteria for the scoring system" the panel used to evaluate the candidates, Finizie Aff. ¶ 53, is beside the point.  The lack of defined criteria -- or, for that matter, the inability of the members of the panel to remember details of their deliberations some two years later -- does not demonstrate pretext.  Similarly, the fact that Finizie was qualified for the position is an element of the prima facie case, not evidence of pretext.[25]

To be sure, Finizie identifies areas in which her testimony differs from that of the members of the panel, see id. ¶ 54, but these differences are not germane to a showing of pretext and are, therefore, not material questions of fact for purposes of summary judgment.[26]  The only issue Finizie raises that even arguably addresses the alleged pretext of the VA's stated reason is her citation of Dr. Maslow's testimony that

---

[25] If it were evidence of pretext, the first and third steps of the McDonnell Douglas burden-shifting analysis would always collapse into one another.

[26] The discrepancies Finizie identifies might potentially be useful as impeachment evidence at trial.  Since we may not weigh evidence on summary judgment but must make all reasonable inferences in Finizie's favor, evidence whose only relevance is that it tends to impeach the VA's witnesses is inapplicable here.

current experience in infection control "was not anywhere near
the top 1, 2, 3 priorities."  Finizie Aff. ¶ 72 (quoting Pl. Ex.
16, at 276:23-24).[27]  Even this statement, however, fails to
demonstrate pretext.  Finizie's affidavit, and the extensive
cross-examination of the VA witnesses by her attorney before the
ALJ, sought to establish that Finizie's resume was as good as
Lyons's in all important respects.  While that could be a winning
strategy if the VA bore the burden of proving the legitimacy of
its reasons for choosing Lyons over Finizie, as we have discussed
above, the burden at this stage lies with Finizie herself.
Absent a showing, therefore, that Finizie's qualifications
objectively exceeded Lyons's on the VA's top priorities, the
hiring committee did not discriminate when it used a less-
important priority -- in this case, recent infection management
experience[28] -- to distinguish between them.  The hiring process

---

[27] The VA vigorously disputes Finizie's reading of this
statement.  While there is certainly merit to the VA's argument
that this statement, taken out of all context as it is, does not
mean what Finizie claims, her reading is not per se unreasonable.
In light of the procedural posture, then, we proceed as though
Dr. Maslow testified that current or recent infection control
experience was not one of the top priorities.  There is no
dispute, however, that it was listed on the job posting as one of
the relevant criteria.

[28] Despite Finizie's arguments that little has changed
in the field of infection control since her prior experience, no
reasonable finder of fact could determine that the recency of a
(continued...)

is not something that can be reduced to a simple, repeatable calculus.  The record before us would not allow a reasonable finder of fact to conclude that Finizie had shown that, based on the VA's most important priorities, she was clearly the superior candidate.

Title VII does not prohibit subjective distinctions between candidates.  Rather, under Title VII, an "employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 259 (1981).  Here, defendant has identified several subjective (and at least one objective) factors on which it found Lyons superior to Finizie.  Finizie has failed produce evidence that demonstrates that she is objectively more qualified and has not provided any other means for finding that the VA's proffered reasons are pretextual.

Because Finizie is unable to show that the VA's proffered reasons for hiring Clarence Lyons over her are

---

[28](...continued)
candidate's experience in that area was not a relevant factor in the hiring decision.  Although Finizie alleges that the job posting "contained the wording 'recent' Infection Control experience to discourage me from applying for the position," Finizie Aff. ¶ 74, she has no personal knowledge of that alleged fact and provides no competent evidence to support it.

pretextual, we will grant defendant's motion for summary judgment as to these claims.

We therefore will grant the VA's motion in its entirety and enter judgment in its favor on all remaining claims.

BY THE COURT:


/s/ Stewart Dalzell, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHARON A. FINIZIE              :       CIVIL ACTION
                               :
         v.                    :
                               :
JAMES B. PEAKE                 :       NO. 03-4437

ORDER

AND NOW, this 16th day of April, 2008, upon consideration of defendant's motion for summary judgment (docket entry # 30), .Finizie's response (docket entry # 36), and defendant's reply (docket entry # 37), and for the reasons discussed in the accompanying memorandum of law, it is hereby ORDERED that:

1.    Defendant's motion for summary judgment is GRANTED; and

2.    The Clerk of Court shall CLOSE this matter statistically.

BY THE COURT:


/s/ Stewart Dalzell, J.

```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHARON A. FINIZIE              :    CIVIL ACTION
                               :
          v.                   :
                               :
JAMES B. PEAKE                 :    NO. 03-4437
```

<u>JUDGMENT</u>

AND NOW, this 16th day of April, 2008, the Court having granted defendant's motion for summary judgment as to some claims on February 4, 2008 and having this day done so on all remaining claims, JUDGMENT IS ENTERED in favor of defendant James B. Peake and against plaintiff Sharon A. Finizie.

BY THE COURT:


/s/ Stewart Dalzell, J.